Is it Malik instead of Malik? It's Malik. I said, okay. Thank you. You may proceed. Good afternoon, Your Honor. It's George Fagan for Circle K. The result that we would ask the court to grant are two alternative ones, two alternative basis for dismissing this claim. Because even before we went to trial, the basic essential material facts were not in dispute. That didn't change during trial. That's why we moved for a Rule 50B. But during trial, the trial court did not grant that. And the nutshell of our argument is – and what happened, the byproduct of that is that we had a trial that was all over the map in terms of the facts and the issues that came in and shouldn't have come in. Because our belief is that really the only issues in this case have to do with the November 2014 letter, which is what contained an offer to rescind a lease that had been terminated. So the old lease, if you will, was a dead letter. It was not alive at all. And Circle K came back on November 24th and said, we offer to rescind. And it's very specific, and the language of the letter itself is very important because it says, we offer to terminate the rescission of the letter, the lease dated October 7, 2014. I'm sorry. That's your reading from the November 24th letter? I was trying to quote from it. Maybe I didn't do it exactly, but that is – I thought it said it is rescinding the termination notice letter. Well, you obviously can't rescind it unless it's – if the agreement's been canceled, the rescission is not something that Circle K can unilaterally do. Dr. Malik had the right to go on his own way and say, no, we don't – the lease is canceled. I'm going on to another potential lessee. That didn't happen. And that's why the acceptance, Your Honor, is the important part of this because Dr. Malik did not have to accept this lease or the offer to terminate the rescission and enter into a new lease. He did not have to accept that. But he did. He did on November 25. And where the waters parted in terms of what happened and what should have happened is right there because the only two documents that are relevant about that are this letter itself and the October 7 – the lease that has the October 7, 2014 date on it. And what the other side has tried to do and what the court permitted to go in front of the jury was all of this other evidence, and it wasn't even admissible evidence. It was all these other circumstances that happened before the November 24, 2014 lease was signed. Well, to some extent, the language in the November 24 letter – again, paraphrasing, not as well as you did, I'm sure – the dates and times of the original lease are still valid. To what extent was that a central issue in either what was given to the jury or in the district judge's rulings? I would call that somewhat ambiguous. Does it mean the dates and times of the original lease mean which dates and times, including the 90 days? Your Honor, I don't think it got that precise in front of either the jury or judge. Well, what's your take on that? It does seem to me it's at least creating ambiguity that we have a rescinded lease that you want to reinstate, and that whatever the date of that lease was, October 7 for reference, let's say. Well, it says more than that, Your Honor. No, I was smiling when I said that. I know you mean more than that. It's the execution date, no doubt. We're in the last argument, right. So you have a – So, you know, which dates and times, but that at least suggests that maybe you're going back, even though you've talked about how that's impossible because the time to deal with this internally ends in a day or two after your November 24 letter. Yeah, and that's the impossibility. I mean, I think it's – But you created the possibility as one thing the jury could decide. You created it? I mean, Circle K created that impossibility as one thing the jury could consider. They weren't asked to decide that. That goes to the second point, though, of why the court could decide. The first point, and I'm going to get back to your question, but the second point is – We need to remember it. I didn't forget my questions. No, no, I'll remember it. Why do I think the language of the letter is not ambiguous? I'll remember that. But the second point goes to the mutual consent aspect. And we have testimony where Dr. Malik and his broker, Mr. D'Amico, said, no, we knew going in there, going in there before November 24, that Circle K thought that October 7 was the relevant date, that that was the date. And that's in their testimony under my cross-examination. Both of them admitted to that. And so the foundation of forming another agreement is mutuality. You have to have a meeting of the minds. If the parties disagree about that and aren't on the same page, which is what happened here, that's the second basis that – because there's really no dispute about that. Dr. Malik and Mr. D'Amico were very proud of themselves having kept a secret from Circle K about how they got you, I guess, is the way I've always thought of it. Now, back to your question, Judge Southwick. The way that you resolve that is you look back at the lease. Because the November 20th, the October, the lease with the October 7, 2014 date on it, the November 24 letter very clearly refers to that. And there is only one. Everybody agrees that there's only one lease that has the October 7, 2014 date on it, and that's because Chicago Title put it in there. All the prior leases have this page, this first page. That is blank for a date. That's where October 7 is. And so you have to read the first paragraph because – and I have to take off my glasses to be able to read that. It says October 7, 2014 is – that's when the lease is, quote, is made and executed by and between Malik and Circle K. So the first page. And that's what was accepted when Dr. Malik signed the lease. It says that this is when the lease is made and executed. Yes, it has the for reference language in there, but the guts of this is about the execution. And you have to read all of the clauses together because if you look at – It doesn't say that that is the effective date that the lease begins. It doesn't. You have to go to page 24 to do that because that's when it – that's the trigger date is always the execution date within the language of this. And that's – the trigger date is what is the trigger for the feasibility period, the 90-day period. And this first paragraph, the last page on page 24 of the lease, which says, have duly executed this lease as of the date and year first written above. The only place that you can write above is on this blank page. And on the page before that, it says on page 23, lease execution signature is on the following page. All of – Again, that's all execution. That's not the date that the lease begins. In the sense that when does the obligation to rent start? Is that what you're talking about, Judge Wiener? Well, what I'm talking about is the lease was made – when was it originally? September, I think. It was signed on July 29 by Dr. Malik and then August 28 by Circle K. Okay. And that was then canceled and uncanceled by two Circle K letters, right? One. Well, yes, yes. One terminated, one canceled. One undid the termination. Yes. One offered to rescind the termination. All right. And why doesn't that mean that the lease started back in August? Because the execution date is referred – that's what triggers the feasibility period. That's the 90-day trigger according to the lease because it's the execution of the document that triggers – there are three periods to this. There's a 90-day feasibility, and I may get it mixed up, but there's one for construction and there's one for permits. And one of them is 120 days and one of them is 180, and I can't remember which. So we hadn't even gotten past the first base. But the document is – the lease is very clear that the trigger for the commencement of the feasibility date, and I don't believe anybody disagrees with that, is the execution date of the agreement, which is why the other side so specifically argued that the execution date triggered – it's sort of the reverse way of your question, Your Honor. Dr. Malik has argued that August 28th is the trigger for the feasibility period because that's when it was executed because they equate execution with signing. And so – What is execution if it's not signing? Well, it is – execution is also signing. But the Leger and Matern case that we cited addresses the circumstances that we have here. It's a district court case, but that's the circumstance where you have a party sign a document on one date and they agree that the execution date is on another or when the triggers start for the running of the periods for the lease, which is what happened here. Because even if you look at the first one being July 29 when Circle K signed it, nobody argues, not even the other side, that that began the feasibility period. They argue that the signing, the execution on the 28th, and all we're saying is that all that's out the window. It's gone after November 11th. But it's ambiguous because the letter says the dates and timing of the lease are still valid. So how could it – it's not necessarily gone. I know you're saying that. But if it's ambiguous and the court was right to take into account this evidence, et cetera, that you're complaining about. What other date could it be besides October 7th in terms of the way the lease is worded? That's a rhetorical question I'm asking because there really is no other date in the lease that serves as the trigger date. It's not the date – Dr. Malik admitted – Dr. Malik and Mr. D'Amico and Mr. DuSagne, their lawyer, admitted that it's not – the mere signing is not the trigger. It's the execution. And what is that and how the agreement defines that? And the agreement defines that as the opening of the escrow, the starting of the process, and that's what happened here. The opening – that's what the escrow agent's practice was here, and nobody objected to that. The escrow agent put the October 7th date in, sent it out to everybody, and then it was timely canceled and then revived. I don't think you can look at any of – it was timely canceled and then there was the offer to rescind the termination. Is the agreement clear – that's not a rhetorical question. It's a real question. Isn't the agreement clear that the October 7th date, whatever gets plugged in at the top of the first page, whatever this means, but is a reference date? It is a reference date. I'm not asking you to concede anything, but that's the label that is given to that date. It's a reference, and the only other thing that can reference is the feasibility period, and that's what it triggers. So I agree, yes, it is a reference date in the sense that that's the date that you reference the beginning of the triggers for the periods, for the feasibility period, which if that's completed starts the permitting period, which then starts the construction period. All those have to be jumped through. And in reality, we've made this argument, too, and it's not really before, but this is really, to my mind, a preliminary agreement. It's not a final one because you had all kinds of hoops to jump through, but that's a different question. The question in here is what was the offer that was accepted, and if it is ambiguous, and I don't believe it is ambiguous, then that means that there was no consent because clearly you had two people who thought two different things, and two different sides who thought two different things, and the testimony is unequivocal about that. Dr. Malik and his broker both thought that it was August 28th, and they kept it to themselves. And that's another issue that's not a dismissal issue, but that's a jury instruction issue because we asked the judge to instruct the jury that they ought to disclose that because if they're in fair dealing and good faith with each other, they ought to say, hey, we don't think you're really going to be able to finish this project in two or three days. Is that what this really means? Instead of, oh, ho, we got you, and we tell you after the fact. But when it comes back to it, that's the issue here. It has to be. There is no other date that's referenced in this agreement because the other sides conceded that there's nothing in this agreement that says signing the signature page alone is what triggers this. Nobody argues that. There's nothing in the lease that says that. And I believe everybody agrees that the purpose of this blank on the first date, on the first page, is to put the date that's the trigger for the feasibility period. Yeah, but read again what it says. I agree with you, Judge. If you just read this alone, you have to read all three parts that I've referred to before, and you have to look at the feasibility period. And when you put that together, the only thing that you can come to the conclusion of, it either has no date when the feasibility period triggered. Let me rephrase it. There is no specific provision in the lease that says that when it is triggered, or it's this date that's put in the first paragraph. But the date that's put in the first paragraph is the only date that it could be. There's no other date in the agreement. Just the 24 pages of this lease have no other date in it. Yeah, but you can look at the documents and see the dates they are signed, and those are other dates. No, you actually can't, because page 24, the exhibits were signed later. Exhibits E and F were the only ones that were signed later. And those were not completely signed. They were left blank in large measure. What was done on the August date? The August date was when Circle K signed. That's what happened on that. Malachet already signed on his date. And then they partially completed some of the exhibits, but the exhibits I'm talking about related to the permitting and the construction. Those were not completed documents. They had not been completely executed. Does that somehow affect the effect of the date, effective date that the lease starts? No. Well, the lease starts in the sense of the obligation to pay rent, yes, at the very end, once the construction is finished. I didn't think that's what you're talking about. The obligation to pay rent is separate from when does the lease start again. Right. The lease starts the only document that concerns when the lease starts is the original 24 pages of the lease, which have no date and no place for any date except for that first paragraph. The testimony on both sides, everybody agreed that all the exhibits are really talking about things that occur after that, down the line, after the feasibility period has ended, not before. That's why the 24 pages of the lease and why the date in there is important. Why inserting the date in the paragraph is critical. When you come back, can you address briefly the prism by which we review all of your legal arguments? Sure. Because you sort of raise them as jury issues in which there's a standard of review of perhaps a plain error if they're not preserved, but then you sort of raise them as a matter of law, but I can't tell if . . . Well . . . So if you'll address the prism by which you want us to review these issues . . . What we just discussed, I think, is de novo, then I'll address the rest. Okay. Well, and you tell us why it's de novo when you come back. Thanks. May it please the Court. Tim Richardson on behalf of Malachy Zones. Your Honor, Judge Wheeler, to answer your question, specifically the first page does state this lease dated blank for reference purposes, and the question really does become the execution date, because it's 90 days from the execution. So to your point, Judge, what is the execution date? And the answer to that came precisely in the testimony, and this is in the record. At 3155, I asked Mr. Bernards, who was the individual from Circle K who did sign the lease. I asked him, my question is, when did you sign this? And he said, I believe the signature for this lease was August 28th. So we now know when my client signed it, which was July, and then it was sent to Circle K, and they signed it in August, August 28th. And to your next question, Your Honor, what does that mean? What does execution mean? Because it's not 90 days from the reference date. It's 90 days from the execution date. So I asked Mr. Randy Horn, who was the director who had to approve this lease, and I asked him in trial, and this is on page 3232 of the record, I said, question, section 4.1 says, upon execution of this lease, tenants shall open an escrow. He said, the execution would be the signing. I said, by who? He said, by the parties. And why is that so important? They keep talking about the date the escrow agent put on the lease. But under section 4.1, upon execution of the lease, the tenant shall open an escrow. So the question becomes, what is the execution? And he indicated here in testimony, it's the signing of the parties. But it goes beyond that. He also indicated on page 3233, I asked him again, and the execution would be the signing. Correct? That's what you said. He said, execution, signing, yes. By whom? By the parties. And then we had Tim Peters, also from Circle K. He's the individual who was directly involved with getting this lease begun, started, doing the due diligence, and so forth. He states on page 3202 of the record, he says, in corporate real estate, use the term executed or signed to mean both the same thing. And then we move to Tim Peters on Cross, on page 3483. I said, you told us yesterday, execution means signing. His answer? Interchangeably. Then I asked him again, on page 3503, I had to impeach him with some deposition testimony. So I said, I'll ask you again, what does execution of the lease mean to you? He says, it means, in that case, probably when people signed it. So, if we go from that, and we want to define what the term execution means, then certainly execution, as we all know is a common term, is when you would sign the document. But it also means, as indicated by the party's own testimony, they believed when they signed it. Now, I understand their argument is, we had a different understanding. We didn't believe that it was going to be August. We thought it was going to be October. That's an argument they made to the jury. But the jury had to make the determination as to whether or not that was true. And the jury ultimately determined that that was not the intention, that the intention was, in fact, for this to be August 28th. And there's a few things, too, Your Honor, going to your standard review question. The SMI Owen Steel Co. v. March 520, 432, the indication there, the ruling there, is a unanimous civil jury verdict. Well, let me back up a second. This was a unanimous civil jury verdict, just as a backdrop, obviously. We tried this before, a jury, and it was unanimous. The standard of review with respect to a jury verdict is especially deferential. The deference must still be given to the factual findings made by the jury. That's Evans v. Ford Motor Company. The court must draw all inferences in favor of the non-moving party, but may not make credibility determinations or weigh the evidence. That's better be McAddy. I also was a little bit confused as to what the standard. I understand that they're indicating De Novo, but it's not De Novo as the facts. What we really have here is a diversity case where there was a factual determination that had to be made by the jury. Once the jury reviewed all the evidence and made those credibility determinations, the jury determined that the intent of the parties was to be August 28, 2014, and that's why we're here today. Is there evidence in the record that there was an actual meeting of the Monds on the that's the day and the other client believing it's something else or didn't happen at all? Yes, Your Honor, there are. I'll point those out for you briefly. The first reason that we know that is on Record 3155, Brian Bednars, who signed the lease, indicated he signed it on August 28. Going further, we have Tim Peters on page 3201 to 3202 indicating that execution does mean signing. We have Randy Horne. And that's what you referred to earlier. Yes, Your Honor, that's exactly correct. Randy Horne, and I'm just kind of going through these, Your Honor, so I can build to your question. Okay, that's good. This is very helpful. Yes, Your Honor. Randy Horne, director of Circle K, who was involved in approving the lease, admitted that execution means signing, and that's 3232 through 3234 of the Record on Appeal. Also, very important, I believe, so to your point, on August 7th, just days before the signing, there's an email, and this is Record 3795. It's Tim Peters of Circle K. This is the individual who's handling the lease and getting things involved. He writes to the broker for the plaintiff, and he states the leases were en route to be, quote, executed that month. That's August 7th, 2014. Is there any post-October or November evidence like this? See, that's all prior to the original date, when there wasn't a big hangup. Right. Is there anything that is in the relevant time period after there's already been a confusion? There is, and I'll address that, and I'll get to the rest of it. To jump to that, on December 9th, he talks about these exhibits, right, the commencement dates. On December 9th, that's well after all of this. This is on Record 3865 to 3866, and 2868 to 2869. The counsel for plaintiff, which was not me, this was his prior counsel, sent an email to Circle K showing them the lease execution date of August 28th, saying, hey, here's Exhibit E. I'm sending it over to you, as we're supposed to do. It says right on there, August 28th, 2014. That was on December 9th. Not a single word. Nothing. Complete silence. Nothing comes up. In fact, nothing ever comes up about October, ever. The first time in the entire record we ever see October 7th as being the date is after there's litigation, and lawyers are involved. And the lawyers are discussing it. At that point, that comes up. But very telling is the December 9th. I would believe that if Circle K received a letter from a lawyer on December 9th, which would have been after the term they were in, showing that the date was August 28th, and they really believed it was October 7th, that there would have been some substantial pushback on that.  Before you leave that, how exactly was the December 9th email, or whatever it was, referencing that date? They provided them the . . . it's actually a 3866 in the record. It's an Exhibit E delivery date agreement. And what it says . . . 3865 is the actual email from the lawyer, Your Honor. And it says, Dear April . . . April was the counsel for Circle K. It says, Dear April, in accordance with the lease, I'm sending over the filled-out Exhibit E, the delivery date agreement. Please advise or confirm that you are in agreement with the delivery date that I included in the signed Exhibit E. And then he attaches to it Exhibit E, which they had already signed on August 28th, which indicates that the date is November 28, 2014. Well, does it mean execution date? Something happened on August 28th. That's right. Is it saying that is the execution date for purposes of this? I'll read it to you, Your Honor. It says, This delivery date agreement is entered into between Malik & Sons and Circle K stores to evidence the delivery date of the lease premises as described in that certain lease dated August 28, 2014, between landlord and tenant for property located at Exhibit A of the lease. Somewhere in the lease it refers to a delivery date as when the premises are being turned over to Circle K? Right. To your points previously, there are — what's important is the 90-day feasibility period. That's the time that they have the ability to get out of the lease if they want to. After that 90 days passes, Circle K is in the lease. It's just that there's other things that they need to do for permitting and there's other time delays of things they have to do after that point. But the 90-day feasibility period is the term, the time that Circle K has to do their due diligence, kind of a free look. And when does it say that starts? It's 90 days from the execution of the lease, which was our point to the jury. We have to determine — the jury has to make the determination what is the execution date. The point only is it doesn't say from the delivery date or something else. No, no. It still seems like your e-mail doesn't add that much to our consideration of whether there was sufficient evidence here to do what was done by the jury. Right. I think what's important, though, about that e-mail is when they do get it in December and it references November 28th, that the argument that they make is they always had this adamant belief that it was always October the 7th, and yet their lawyer gets this letter and Circle K receives this letter and does the same thing about it. I just think that that's — you know, to your question, Your Honor, that is something that came after the fact. I meant to say August 28th, just now. I'm sorry. August 28th. Yes, Your Honor. I was just making sure the record is — that's what you read to us the first time. Yes, Your Honor. And — Well, this is a legal question for the court or fact-finding for the jury, but it does seem to me the unusual — maybe it's not unusual. I don't know enough about Circle K and Malik. But the rescission and then the offer to revive the lease doesn't seem to me self-evident that they would go back to the original dates on the lease. This is several months past all of that. You're starting it up again, a lease like this with all these benchmark dates on things to occur. What makes the original timing of the lease controlling once it's been rescinded and offered to be revived and your client agrees to revive it? Well, I believe it's the way that that November 24 letter was written. I talked to co-counsel about that language. Is that what you're talking about, that the dates and whatever else of the original lease — Yes, Your Honor. Was that not — I mean, it's plausible. I don't think it's convincing — conclusive. Was the jury given that as part of the explanation? I mean, it's one of the things I'm wondering about, to what extent was that an issue at trial, that that language somehow is important and the jury should latch onto it in deciding that the original dates are still in play after the lease was revived? So to answer your question, Your Honor, it was definitely an exhibit. It was definitely argued by both sides. Argued in what way? In the way that we're talking about it now? So our argument was — to try to kind of paraphrase, our argument was that this letter, November 24, when it indicates this letter will act as notification that the effective dates and timing in the lease dated October 7, 2014, are still valid and the lease is still valid, our argument is that that did not change or modify the execution date. That's what you argued to the jury, not what you're arguing to us. Yes, Your Honor. Yes, Your Honor. Absolutely. That did not change or modify the execution date, because the execution date was already signed. It was signed on August 28. If this were to change or modify under the lease, it has to be in writing, and to us, our argument to the jury is that would have to have come in and say, we are now changing the, quote, execution date of this lease, and that didn't happen. And to go further, to the extent that this is ambiguous and confusing or doesn't quite make sense, it was drafted by Circle K. This wasn't drafted by Dr. Malik, which was their argument to the jury was Dr. Malik was, I guess, in their words, pulling a fast one on Circle K by not telling them they believed the date was August 28. But Dr. Malik signed the lease like he was supposed to. He delivered it like he was supposed to. He signed their letter like he was supposed to. But their argument to the jury is, but Dr. Malik was pulling a fast one on us. He was hiding the truth. Dr. Malik didn't draft any of this. He just signed the documents that were presented to him. The point being, it was signed on August 28, 2014. Also, too, I think, which is very important, the record 3207 to 3208, and I think this is pretty telling in terms of what the intent of the parties were, because that's ultimately what the jury had to determine. Was there a meeting of the minds? Was there not a meeting of the minds? Was there a lease? And if there was a lease, what was the date? August 15th, this is a few days before the lease is to be executed, Tim Peters, who is with Circle K, prepares an internal cover memo to Randy Horn, who is the director, indicating that he would be receiving, quote, executed leases that week, and that Circle K had, quote, 90 days from the execution of the lease, no exceptions. And what's so important about that is that no exceptions, which is in bold and in caps, that's in the memo itself. So I don't know how Circle K could argue to a jury or to anyone that they believe October 7th was going to be the date when he's sending a letter on August 15th saying they're going to be executed this week, not executed in October, not executed several months from now, executed this week, and we only have 90 days from the execution, no extensions. Very, very telling email and cover memo. I'm sorry. Go ahead. I think it's accepted that the escrow agent is the one who put in the October 7th date. What evidence was there about the relationship you had, the relationship Circle had, Circle K had to this escrow agent, understanding of the normal processes of the escrow agent? What do we know about that from the evidence in the record? So the escrow agent was allowed to testify as to what she did, what the facts were. Was there any knowledge on your part, your client's part, or Circle K's part about these standard practices? Was that testified to? There was no Rule 26 report done by the defendants to introduce, and that was the judge's problem with allowing expert testimony as to what an escrow agent does. They didn't introduce an expert to or provide us with Rule 26 F reports to what an escrow agent does, and therefore, that testimony did not come in. However, she did allow the escrow agent to testify about what happened in this particular case, and the parties got to testify as to whether they believed that was their broker or agent and that sort of thing, but not specifically as to what an escrow agent does. But I think what's also important is why did we have October 7th, right? Because under Section 4.1, it says that immediately upon execution of the lease, the tenant, which is Circle K, is to deliver the lease to the escrow agent. So immediately upon execution would have meant the same day. But why did it go out all the way to October 7th? And the answer to that is because Ms. Deborah Brighton lost the lease. So my client signed it, sent it to Circle K. Circle K then lost it. They lost the lease for about 40 days. And I think what's important is. Kennedy, what do you mean by lost? I was going to read that to you, Your Honor. She indicates Deborah Brighton. And I asked her, my computer. Okay, I said, what happened? I walked in my office and put it behind on this back part of my desk. And I said, that would have been on August 28, 2014. You did that? She said, yes, sir. I said, then what happens? She says, then I did other work that I had to do. And I said, when is the next time you looked at the lease? She says, it wasn't until I sent it to Chicago Title. I said, why? She said, because I got busy and I overlooked it. And I just forgot it was sitting there. So the question was, so you didn't intend to wait until October 6 to send it? You just forgot about it sitting behind you? Yes, sir. And that's page 3273 and 3274. So, again, the problem, I think, with their argument is that they always intended it to be October 7. You'd have to kind of be a Nostradamus, right? You'd have to know that Ms. Bratton was going to get it, was going to lose it, was going to find it, and then was going to send it. And to me, that's patently unfair, not only under Section 4.1, because it's their responsibility to immediately send it to the escrow agent. Had they done that, it would have had August 28 on it anyway. But what you can't do, and this is where the mutual new letter error issue comes in, what you can't do is get a lease, lose it, and then benefit from that time period, right? Because my client's stuck. Once he signs it, he can't negotiate or swap this around to anyone else. They, on the other hand, have locked him in. So everybody signed it, but they effectively, their argument is we got another 40 days. Why did we get another 40 days? Because we lost it. Well, couldn't he, until he's notified that they've signed it, he could do other things? Oh, he did get a copy of it, absolutely. He got a copy of the lease that was signed by everyone. It's just that nobody made the argument of the October 7 until later. And to go to the October 7, just a couple of things. Neither party signed the lease on October 7. It was obviously by the escrow agent. The parties couldn't have contemplated October 7 being the date because Ms. Bratton forgot about the lease. The escrow agent testified that when she received it, it was already signed. It can't be the date because it would require a certificate of breach of the lease  Yes, Your Honor. Is there any evidence in the record that there was some time when the parties were together or else in communication where your client should have spoken up after it became aware that there was some kind of confusion about this? No, Your Honor. Because you made a big point that they didn't, your client didn't do anything wrong. And maybe it doesn't matter whether they should have just morally or ethically or whatever. Legally, they don't have a responsibility. But was there a time where they ever talked or realized that the other side had a different viewpoint and they just kept their mouths shut? No, Your Honor. The parties didn't speak to one another. We had a broker and we had an attorney on the other side and Mr. Peters who would send the information and the parties would sign. So they never did get together and meet in a group or discuss these things, which, again, I think is important because the really issue here is when it was signed by the parties, when it was executed, and when that 90 days elapsed. And why the jury, why it was so important, again, this is a factual issue. To the extent that this is ambiguous, which I think people have indicated is true, it is up to a jury to make a fact finding. They could have done one of three things. Your time is up. Thank you. I appreciate your time very much, Your Honor. Thank you. Your Honor, very briefly on the standard, we believe de novo applies for the Rule 50 review because these are questions of law. As to the errors, there is a de novo review if the jury's, the instructions to the jury were contrary to law, which we objected to contemporaneously and believe that many of them are. The classic example is the burden of proof. I mean, question number three on the jury verdict form, put the burden of proof on the defendants, on Circle K, to show that there was a contract or so that there was a modification of the contract. And, again, there's several problems with that because the contract was canceled. There was no modification. It was a new one. And besides that, the party claiming the benefit of the contract has the burden of proof to show there was a contract. You're saying that those two letters, one canceled, one reinstating, constituted a new contract? It's an offer in acceptance, clearly. You had a dead letter. You had no lease after November 11th. It's gone, nothing. Dr. Malik could have done whatever he wanted with this lease. It was dead after. And the other thing that's important about the October 7th date is that Dr. Malik got that document, and the question really is was anything done or said between October 7th and November 24th about October 7th not having any significance at all? And the answer to that is no, although Dr. Malik and Mr. D'Amico said that they knew beforehand. What's your best case for that being a new lease rather than reinstating the old one? It's an offer in acceptance. It changed the terms of the original agreement. What terms did it change? This date, the date that was written right here, October 7th, was not on the original lease. And nobody put that date in until October 7th. And so that is why this is a new offer. It's a new deal. And that's why we had an instruction about either a counteroffer or a new offer or a contract offer in acceptance because that line was not filled in. And I couldn't come up with an article in my head while you were asking me the questions, but Article 4.3 is the other key. That's the trigger for the execution because it's and it triggers the feasibility period. It specifically says that the 90-day period begins upon the full execution of the lease. That's the feasibility period. That's the significance of execution being in the opening whereas clause and it being on the last page. It ties them together. So that's why it's important that the mere signing is obviously not the trigger for that. Who put that number in? This is in the original lease that everybody signed. But I'm saying who put the number in on the first page? The escrow agent. And that goes to another party. So it's neither party. Neither party put it in. An independent party put it in. And that's, frankly, the testimony of one of the U.S. And that party had no authority to set the beginning date of the lease. Actually, the testimony by every single Circle K witness is that's what our experience was going to Judge Southwick's question. That's how we determine the trigger date. When this blank is filled in, the testimony was unequivocal every single day. It's not a question of a blank being filled in. It's who filled it in. The Chicago title escrow agent. And they had no authority. They weren't either the lessor or the lessee. They were not the lessor or the lessee. They put the date in. The point is, Judge, that everybody accepted it. The lease, the letter, the November 24 letter that was signed had this date in it. So that means that the October 7, 2014 date was accepted by Dr. Malik. If he didn't want to have the lease, if he wanted to sign the original lease undated without this date, that's what he should have done. If he wanted October 7 to have no significance. But this insertion of October 7 changed the agreement. Hadn't he already signed it? Who? Malik. He had signed it without the October 7 date. And so had your client. That's the whole point. That's why this is a different agreement because four months later everybody's signing and agreeing that this is now the lease, this thing with the October 7 date. That has a different definition. There was no definition for execution date until this was, until the escrow agent put it in. And then the parties accepted that. Forget about the execution date. I understand that. Sorry? Forget about the execution date. It's the effective date of the lease. That's not what the If it doesn't specify it, it's when the last party signs it. Well, in that case, it's November 25th is the effective part of the date of the lease because that's when Dr. Malik signed the letter. Signed in August. No, sir. He signed the letter. The lease in August. He signed the letter that became the lease, that was the lease on November 25. He didn't sign anything that had a date with October 7. He signed a new lease then. No, but he had signed one that said August 28. But that was gone. It was no longer enforced. That lease with a blank was gone. If cancellation and reinstatement does that. I don't know how. If you have a terminated lease and it's gone, and then somebody says, I'm going to offer you to rescind the termination, and I'm changing the terms of the original lease, that's an offer in acceptance. How did it change the terms of the original? It put the October 7 date in that space. I don't know how to say it. That's the date that's referred to throughout in five different places in the lease as the execution date. It's defined as the execution date in the lease. It's the trigger for the period. It's the trigger for the commencement of the feasibility period. We'll see. Counsel, I have just a quick question. Yes. I want to make sure I'm looking at the right thing in the record. Sure. I'm looking for the objections to the charge as constituted. I have an afternoon session from the trial February 1, 2017, and the judge says, this is your time to put things on the record. And then you say, do you want to do it at the end? The judge says, let's just do it. And then people start putting some things on the record. And sometimes it's just, I object. And is this what you're relying on to say that things are preserved? Or is there something else that we're supposed to look at in addition to this or instead of this? We had objections that we filed to everybody's jury instructions. So those would be part of those. And some of what I think you're seeing is a shorthand version of the objections that were adopted in some instances. In other words, there were proposed jury instructions put up by each side. And then each side had objections. We had some that were joint. We had some that were. . . Okay. Are you saying that we should consider some written objections in addition to this transcript in evaluating whether objections are preserved? Yes. Okay. Because they were adopted and referred to by us in a shorthand way instead of going through chapter and verse. Okay. So we have to look at some written. . . We can't look at the charge conference. My recollection is that we talked about numbers and then we talked about some of them. We referenced back to the objections that were made. Some of them I think we made. . . It's a fairly brief charge conference. I believe that we had preserved the objections through the objections to the jury charges as they were proposed. Okay. When they were proposed. Thank you. Thank you, counsel. You've answered my question. Thank you. This case is submitted and concludes the case.